UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DUSTIN M.,[1]

      Plaintiff,

  v.                                                                               20-CV-428-LJV
                                                                                                         DECISION & ORDER
COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____

On April 10, 2020, the plaintiff, Dustin M. ("Dustin"), brought this action under the Social Security Act. He seeks review of the determination by the Commissioner of Social Security ("Commissioner") that he was not disabled. Docket Item 1. On December 21, 2020, Dustin moved for judgment on the pleadings, Docket Item 12; on February 19, 2021, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 13; and on March 12, 2021, Dustin replied, Docket Item 14.

For the reasons stated below, this Court grants Dustin's motion in part and denies the Commissioner's cross-motion.[2]

---

[1] To protect the privacy interests of social security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] This Court assumes familiarity with the underlying facts, the procedural history, and the ALJ's decision and will refer only to the facts necessary to explain its decision.

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the [Administrative Law Judge ('ALJ')] applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

Dustin argues that the ALJ erred in three ways. Docket Item 12-1. First, he argues that the ALJ improperly rejected the opinion of the medical expert, Allan R. Goldstein, M.D., that Dustin's shoulder injury medically equaled listing 1.02B. *Id.* at 11-

15.  Second, he argues that the ALJ erred in giving "significant weight" to Dr. Goldstein's "specific functional analysis" but then formulating a residual functional capacity ("RFC") that excluded an important limitation in Dr. Goldstein's analysis.  *Id.* at 15-17.  Third, he argues that the ALJ erred in discounting the June 2016 opinions of his treating physician, Jeremy Riedesel, M.D.  *Id.* at 15-22.  Dustin also asks this Court to remand solely for the calculation of benefits[3] or to impose a time limit on further administrative proceedings.  *Id.* at 22-23.

The Court agrees that the ALJ erred in discounting Dr. Riedesel's opinions and, because that error was to Dustin's prejudice, remands the matter to the Commissioner.  Because the ALJ must reconsider Dustin's RFC at step four, the Court denies Dustin's request to impose a time limit on further administrative proceedings.[4]  The Court will not reach the issues raised by Dustin that are not addressed in this decision "because they may be affected by the ALJ's treatment of this case on remand."  *See Watkins v.*

---

[3] Dustin argues that the ALJ erred in finding that his shoulder impairment did not medically equal listing 1.02B, and he asks this Court therefore to find that he is disabled based on that listing and to remand solely for calculation of benefits.  *See* Docket Item 12-1 at 22.  But that argument lacks merit.  As the ALJ correctly observed, listing 1.02B requires that a claimant has loss of function in *both* upper extremities, *see* Docket Item 11 at 24-25; 20 C.F.R. Pt. 404, Subpt. P, App. 1, and Dr. Goldstein testified that Dustin had loss of function in only his right upper extremity, *see* Docket Item 11 at 67-68.  So even though Dr. Goldstein testified that Dustin "equaled" listing 1.02B because "[h]e has limitation that is severe of the right shoulder," *see id.* at 68, the ALJ correctly rejected the illogical assertion that a severe limitation in one extremity could somehow equal loss of function in both extremities.  And that is especially so in light of Dr. Goldstein's opinion that there were "no limits with the left arm."  *See id.* at 69.

[4] Although the Second Circuit has instructed that district courts may, in appropriate circumstances, set a time limit for reconsideration of a claim, *see, e.g.*, *Butts v. Barnhart*, 416 F.3d 101 (2d Cir. 2005), that remedy is not appropriate here.  In *Butts*, the Second Circuit found a 120-day time limit appropriate where the district court was "reviewing an ALJ's decision at step five, rather than step four, of the five-step inquiry."  416 F.3d at 103.  Here, the Court remands because the ALJ erred at step four.

*Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bonet ex rel. T.B. v. Colvin*, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015).

When determining a claimant's RFC,[5] an ALJ must evaluate every medical opinion received.  20 C.F.R. § 416.927(c).  That includes evidence from outside the disability period if that evidence relates to the relevant time frame.  *See, e.g.*, *Hartfiel v. Apfel*, 192 F. Supp. 2d 41, 44 (W.D.N.Y 2001) (considering treating physician's relevant diagnoses that postdated insured status).  An ALJ generally should give greater weight to the medical opinions of treating sources—physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists who have "ongoing treatment relationship[s]" with the claimant—because those medical professionals are in the best positions to provide "detailed, longitudinal picture[s] of [the claimant's] medical impairments."  *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (summary order).  In fact, a treating physician's opinion is entitled to controlling weight so long as it is "well-supported [sic] by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."  20 C.F.R. § 404.1527(c)(2).

Before an ALJ may give less-than-controlling weight to a treating source's opinion, the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and[] (4) whether

---

[5] A claimant's RFC "is the most [he] can still do despite [his] limitations," 20 C.F.R. § 416.945, "in an ordinary work setting on a regular and continuing basis," *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 86–8, 1986 WL 68636, at *8).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*

the physician is a specialist." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quotations and alterations omitted). These are the so-called "*Burgess* factors" from *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight" to a treating source opinion "is a procedural error." *Id.* at 96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013) (per curiam)). And here, the ALJ made that procedural error: he discounted the opinions of Dustin's treating physician, Dr. Riedesel, without explicitly discussing the *Burgess* factors.

The ALJ assigned "little weight" to Dr. Riedesel's opinions of June 24, 2016; "some weight" to his opinion of August 17, 2016; and "little weight" to his opinion of April 21, 2019. Docket Item 11 at 31-32. The ALJ mentioned that Dr. Riedesel was Dustin's "treating physician," *id.* at 31, but he never acknowledged that Dr. Riedesel had treated Dustin approximately every four months since 2013, *see id.* at 908; *see also id.* at 662. The ALJ thus failed to "explicitly" consider "the frequency, length, nature, and extent of [Dr. Riedesel's] treatment." *See Greek*, 802 F.3d at 375. The ALJ did not address whether Dr. Riedesel was a "specialist." *See id.* And while the ALJ rejected some of Dr. Riedesel's opinions as generally inconsistent with the "medical record" or "medical evidence," Docket Item 11 at 32, he never said what that supposedly inconsistent evidence was, and he certainly did not explicitly address "the amount of medical evidence supporting the opinion[s]," *see Greek*, 802 F.3d at 375.

"Because the ALJ procedurally erred, the question becomes whether 'a searching review of the record assures [this Court] that the substance of the [treating-physician] rule was not traversed'—*i.e.*, whether the record otherwise provides 'good

5

reasons'" for discounting Dr. Riedesel's opinions. *See Estrella*, 925 F.3d at 96 (alterations omitted) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam)); *see also Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (declining remand where "application of the correct legal principles to the record could lead [only to the same] conclusion"). The Court finds no such assurance here.

Dr. Riedesel's opinions were generally consistent with each other and with his treatment notes—strong evidence of their validity. For example, Dr. Riedesel's June 2016 and April 2019[6] opinions found that Dustin was limited in his ability to walk, sit, and stand and that he needed to alternate among these positions throughout the day. *See* Docket Item 11 at 660, 663-64 (opinions of June 24, 2016, finding that Dustin can stand for 30 minutes and sit for 60 minutes at a time; can sit for 4 hours total and stand or walk for 2 hours total in an 8-hour workday; and needs to walk for 5 minutes every 45 minutes); *id.* at 909-10 (opinion of April 21, 2019, finding that Dustin can sit for 15 minutes and stand for 15 minutes at a time; sit for 2 hours total and stand or walk for less than 2 hours total in an 8-hour workday; and needs to walk for 5 minutes every 30 minutes). He also found that Dustin was limited in his ability to twist, stoop, crouch, and climb. *See id.* at 665 (opinion of June 24, 2016, finding that Dustin could occasionally climb ladders and twist and rarely climb stairs, stoop, and crouch); *id.* at 911 (opinion of April 21, 2019, finding that Dustin could only rarely do each of those things).

---

[6] Although Dustin's insured status ended on December 31, 2016, evidence rendered after that date still must be considered by the ALJ if it relates to the relevant time frame. *See Hartfiel*, 192 F. Supp. 2d at 44. The April 2019 opinion relates to the relevant time frame because it "shed[s] light on [Dustin's] condition during that period," *see Clark v. Saul*, 444 F. Supp. 3d 607, 621 (S.D.N.Y. 2020) (citations omitted): For example, the opinion includes diagnoses that Dustin had during the relevant period, and it mentions the results of an August 2016 MRI, *see* Docket Item 11 at 908.

Dr. Riedesel also consistently noted Dustin's back pain. *See id.* at 908 (opinion of April 21, 2019, noting that Dustin had an "MRI done on 08/5/16 [that] show[ed] multiple disk bulges at several different levels"); *id.* at 676 (opinion of August 17, 2016, finding that Dustin had "low back pain" with a "[f]air prognosis"); *id.* at 580, 639 (treatment notes dated March 20, 2015, finding that Dustin had "[m]ild to moderate tenderness in the right lower costal cage"); *id.* at 647 (treatment notes dated November 13, 2015, finding the same). And each opinion, as well as prior treatment notes, found that Dustin's asthma and COPD would affect his functional abilities. *See id.* at 659-60, 662-63 (opinions of June 24, 2016, noting Dustin's "[m]oderate COPD," "[c]hronic cough," "[w]heezing," and "[d]yspnea on exertion" and finding that he "[c]annot tolerate" dust, smoke, and fumes); *id.* at 676 (opinion of August 17, 2016, finding that Dustin's "moderate persistent asthma" is "[u]nlikely to improve significantly" and that Dustin cannot "participate in work activities"); *id.* at 911 (opinion of April 21, 2019, explaining that Dustin "has moderate persistent asthma[,] . . . [which] makes him exceptionally sensitive to any fumes, odors, or particles which may be in the work environment"); *see also id.* at 725 (treatment notes dated November 29, 2016, reporting that "[Dustin] is only able to walk short distances [because] he gets short of breath").

Dr. Riedesel's findings also were supported by the treatment notes and opinions of other providers. *See e.g.*, *id.* at 546, 548 (opinion of Samuel Balderman, M.D., finding that Dustin "can walk approximately 200 feet" and had a "[m]oderate limitation in prolonged walking, climbing, or carrying due to pulmonary disease"); *id.* at 598 (treatment notes of William D. Fritz, M.D., reporting that Dustin had "[b]ack pain" and

7

"[n]umbness"); *id.* at 74 (Dr. Goldstein's testifying that Dustin "would have to avoid irritants[] [and] fumes").

Not only did the ALJ err by not explicitly addressing the *Burgess* factors before discounting Dr. Riedesel's opinions, but he also relied on inappropriate reasons for doing so.  For example, the ALJ assigned "little weight" to Dr. Riedesel's June 2016 opinions because they were "internally inconsistent."  *See id.* at 32.  In those opinions, Dr. Riedesel found that Dustin was limited in his ability to sit, stand, and walk and that he had to change positions throughout the day.  *Id.* at 660, 663-64.  The ALJ reasoned that the "diagnoses considered [in the opinions] include[d] only COPD, hypertension, and a right shoulder impairment . . . , none of which would affect the claimant's ability to sit or would require posture changes."  *Id.* at 32.

Although Dr. Riedesel's June 2016 opinions did not explicitly refer to a diagnosis regarding Dustin's back problems, his other opinions and his treatment notes from before and after that time certainly did.  *See, e.g., id.* at 580 (treatment notes dated March 20, 2015, finding "[m]ild to moderate tenderness in the right lower costal cage"); *id.* at 908 (opinion dated April 21, 2019, noting that an August 2016 MRI showed "multiple disc bulges"); *id.* at 676 (opinion dated August 17, 2016, noting "low back pain").  The ALJ said that "[i]t is implausible to think that [Dr. Riedesel] left out these additional diagnoses in 2016 that were relevant to his opinion."  *Id.* at 32.   But given the repeated references to back problems in Dr. Riedesel's records, he may well have inadvertently omitted that diagnosis in the June 2016 opinions.  That does not render those opinions internally inconsistent; at worst, the unexplained omission evidences a

gap in the record that the ALJ was obligated to fill.  *See Rosa*, 168 F.3d at 79 n.5 (quoting *Perez*, 77 F.3d at 48).

Along the same lines, the ALJ discounted Dr. Riedesel's August 2016 opinion because it "did not provide functional limitations."  *Id.* at 32.  But whether a medical source opinion is broken down into a function-by-function analysis is not one of the factors that the Commissioner considers when deciding the weight given to a treating source opinion.  *See* 20 C.F.R. § 404.1527.  And even more basically, if the lack of function-by-function analysis in a medical source's opinion creates a gap in the record, the ALJ must fill that gap by recontacting the source, not simply disregard the opinion to the claimant's detriment.  *See Tumpower v. Colvin*, 2015 WL 162991, at *14 (W.D.N.Y. Jan. 13, 2015) (remanding "where the ALJ rejected Dr. Newman's opinion in large part because the ALJ found that it was incomplete [and] the ALJ had a duty to develop the record by re-contacting Dr. Newman for clarification regarding [the] foundation for [the] opinion") (citations omitted).[7]

Finally, remand is appropriate because Dr. Riedesel's opinions conflict with the RFC in significant ways, and the ALJ's errors therefore prejudiced Dustin.  *Compare*

---

[7] The ALJ rejected Dr. Riedesel's August 2016 opinion also because it was "a conclusory statement on the ultimate issue of disability, which is an issue reserved to the Commissioner."  Docket Item 11 at 32.  If an opinion effectively decides the ultimate issue—that is, that the claimant is disabled—it opines on a matter reserved to the Commissioner and to that extent is not considered a medical opinion and is not entitled to special weight.  20 C.F.R. § 404.1527(d).  Nonetheless, in such a circumstance, the ALJ still must analyze what is behind the opinion or recontact the provider to request a translation of the opinion into language that fits the Social Security context.  *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (the fact that the "ultimate finding of whether a claimant is disabled" is "reserved to the [C]ommissioner . . . means that the Social Security Administration *considers the data that physicians provide* but draws its own conclusions") (emphasis added).  The ALJ did not do either of these things here.

Docket Item 11 at 25 (RFC finding that Dustin could perform "light work"), *and* 20 C.F.R. § 404.1567(b) ("Light work involves . . . a good deal of walking or standing, or [] it involves sitting most of the time with some pushing and pulling of arm or leg controls."), *with* Docket Item 11 at 660-64 (Dr. Riedesel's opining that Dustin can stand for only 30 minutes and sit for 60 minutes at a time; sit for 4 hours total and stand or walk for 2 hours total in an 8-hour workday).[8] In other words, if the ALJ had given controlling weight to the opinions, that would have changed the RFC and might well have resulted in a finding that Dustin was disabled. That requires remand. *See Manuel v. Comm'r of Soc. Sec.*, 2020 WL 2703442, at *4 (May 26, 2020) (remanding where the ALJ failed to consider an opinion that "could have resulted in a finding of disability . . . if given weight by the ALJ").

In sum, the ALJ did not explicitly address the *Burgess* factors as to Dr. Riedesel's treating source opinions and gave inappropriate reasons for discounting them. Those errors prejudiced Dustin and therefore require remand.

---

[8] The ALJ's excluding Dr. Riedesel's sitting, standing, and walking limitations is particularly troubling. Indeed, "[w]hen the record indicates that a [claimant] has significant limitations with regard to his ability to sit for extended periods of time, the ALJ should engage in a detailed discussion concerning [the claimant's] restrictions." *Overbaugh v. Astrue*, 2010 WL 1171203, at *9 (N.D.N.Y. Mar. 22, 2010). Under such circumstances, the RFC "must be specific as to the frequency of the individual's need to alternate sitting and standing." SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996); *see also Overbaugh*, 2010 WL 1171203, at *9 ("Even though the treating physician set forth restrictions regarding [the claimant's] need to alternate between sitting and standing, SSR 96-9p and caselaw clearly dictate that the ALJ had a duty to specify the extent of the limitation."). That is because a claimant's need to alternate between sitting and standing "may erode the occupational base"—for example, by making even sedentary or light work impossible to perform. *See Overbaugh*, 2010 WL 1171203, at *9 (citing *Iannopollo v. Barnhart*, 280 F. Supp. 2d 41, 50 (W.D.N.Y. 2003)).

**CONCLUSION**

The Commissioner's motion for judgment on the pleadings, Docket Item 13, is DENIED, and Dustin's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.  Especially in light of the delay that Dustin has experienced because this case already has been remanded once due to the Commissioner's errors, this Court expects "that administrative proceedings on remand [will] proceed expeditiously."  *See Belen v. Colvin*, 2016 WL 1048058, at *4 (S.D.N.Y. Mar. 11, 2016).

      SO ORDERED.

Dated:      August 9, 2021
              Buffalo, New York

                                                  */s/ Lawrence J. Vilardo*
                                                  LAWRENCE J. VILARDO
                                                  UNITED STATES DISTRICT JUDGE